UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEITH MATHIS, DIN 02-B-1280,

        Petitioner,

      -v-                             05-CV-6727(MAT)

                                             **ORDER**

JAMES T. CONWAY, ELIOT SPITZER,

        Respondents.

_____

## I.   Introduction

Petitioner Keith Mathis ("petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a jury trial in the Supreme Court, Monroe County before Justice David Egan on one count each of Rape in the First Degree (N.Y. Penal Law § 130.35(1)) and Sodomy in the First Degree (former N.Y. Penal Law § 130.50(1)). Petitioner was sentenced as a second felony offender to two consecutive 25-year terms of imprisonment and five years of post-release supervision. For the reasons that follow, the Court finds that petitioner is not entitled to habeas relief.

## II.  Factual Background and Procedural History

Sometime during the early morning hours of November 7, 2001, petitioner grabbed, beat, and raped Devonne Stith ("the victim") as she was walking down Samuel McKee Way in the City of Rochester. At

trial, the victim acknowledged using crack-cocaine earlier in the day, and had started to "come down" from her high around 7 or 8 p.m., when she stopped at her uncle's house. T. 280-82.[1] The victim then stopped at a corner store, and proceeded to walk home via Samuel McKee Way when she was grabbed from behind by a man who told her not to scream. She testified that she struggled to escape, but was forcefully dragged into an abandoned garage. T. 252, 254-55. Once in the garage, petitioner beat her, and forced her to perform oral sex on him twice. He also had forcible intercourse with the victim. T. 254-57. Petitioner then released the victim, who was partially clothed, and she fled into the street in an attempt to flag down passing cars. When this proved unsuccessful, she was able to call 911 after the victim approached a woman walking out of a nearby building. T. 260-61.

The victim suffered injuries to her head and face, had a black eye, and lost a tooth and an acrylic fingernail in the struggle. T. 174-75, 255, 264-65. A pair of sneakers, women's underpants, a jacket, and a fingernail were recovered from the garage. T. 169, 190. Stains containing a mixture of blood and semen were also found on the floor of the garage. The petitioner's DNA was found on

---

[1] Citations to "T.___" refer to the trial transcript; citations to "S.___" refer to the sentencing transcript.

oral swabs taken from the victim's mouth, although it did not appear on a vaginal swab.[2] T. 306.

Petitioner testified in his own behalf and told the jury his recollection of the events of November 7, 2001. He testified that on the evening of November 6, 2001, he was visiting a friend on Cady Street in Rochester, where he met a woman named Devonne Smith. T. 396-98, 405. Petitioner claimed that he and the victim had a private conversation, during which the victim agreed to perform oral sex on him in exchange for cocaine. T. 398-99. The two left the Cady Street apartment and headed for an abandoned garage on Samuel McKee Way. T. 400-401. When they arrived, petitioner gave the victim the crack-cocaine as promised. The victim smoked for a few minutes, and then voluntarily performed oral sex on the petitioner. At some point, the victim began to disrobe, suggesting that the two have sexual intercourse. Petitioner denied her request, and stated that he was only interested in oral sex. T. 401-02, 405. At the culmination of this encounter, petitioner ejaculated into the victim's mouth, and she spit it on the garage floor. T. 403.

Petitioner testified that as he was leaving, he saw two men walking toward the garage. T. 403-05. He described the men only as "big" and "bulky". T. 408. Petitioner denied raping or sodomizing

---

[2] The vaginal swab contained DNA from at least three contributors (which may have included the victim's own DNA), but petitioner was excluded as a possible contributor. <u>See</u> Appellate Br. Attach. at 7 ("Lab Report"). The lab report was not introduced into evidence at trial.

the victim. T. 406. The jury deliberated for nine hours before returning a guilty verdict on one count each of rape and sodomy, and acquitting him of a second count of sodomy. T. 520. Petitioner was sentenced as a second felony offender to two consecutive sentences of twenty-five years, and a five-year period of post-release supervision. S. 11-12.

Petitioner appealed his conviction to the Appellate Division, Fourth Department, raising three issues: 1) ineffective assistance of counsel; 2) that the counts of the indictment were not sequentially linked to the proof; and 3) the sentence was harsh and excessive. See Appx. B. The Appellate Division, Fourth Department modified the judgment by directing that the sentences run concurrently, and affirmed the judgement as modified. People v. Mathis, 8 A.D.3d 966 (4th Dept. 2004). Leave was denied on September 21, 2004. Mathis, 3 N.Y.3d 709 (2004).

Petitioner then brought a motion for *vacatur* pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10. Appx. I. The state court summarily denied petitioner's motion, and leave to appeal the decision was denied by the Appellate Division. Appx. L, P.

Petitioner filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254 with this Court, alleging: 1) ineffective assistance of trial counsel; 2) a double jeopardy violation; 3) material evidence was not allowed at trial; 4) the verdicts were repugnant; and 5) the sentence was harsh and

excessive. (Dkt. #1). Through counsel, he has filed a memorandum in support of his claim of ineffective assistance of trial counsel. (Dkt. #11).

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, a federal district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws and treaties of the United States. Coleman v. Thompson, 501 U.S. 722, 730 (1991), *reh'g denied*, 501 U.S. 1277 (1991). A federal court does not function as an appellate court to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts when it reviews a state prisoner's habeas petition. Rather, the court only determines whether the proceedings in state court amount to a violation of federal constitutional rights. Id. Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. Cupp v. Naughton, 414 U.S. 141, 144 (1973).

In cases where the petitioner is in state custody, the habeas court may not grant relief unless the challenged state court conviction was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). "Clearly established" federal law "refers to the holdings, as opposed to the dicta of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. Id. at 405.

A state court decision is an "unreasonable application" of Supreme Court precedent if it "[i]dentifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts ... [or] unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. This standard applies even if the state court decision was a summary affirmation of the conviction that did not explicitly reject any federal claim,

as long as the decision necessarily determined the claim. <u>Sellan v.</u>
<u>Kuhlman</u>, 261 F.3d 303 (2d Cir. 2001).


## 2.    Exhaustion Requirement and Procedural Bar

"An application for a writ of habeas corpus on behalf of a
person in custody pursuant to a judgment of a State court shall not
be granted unless it appears that . . . the applicant has exhausted
the remedies available in the courts of the State ...." 28 U.S.C.
§ 2254(b)(1)(A). A habeas petitioner "must give the state courts
one full opportunity to resolve any constitutional issues by
invoking one complete round of the State's established review
process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).
Typically, this means that federal habeas claims must have been
included in both the petitioner's appeal to the state's
intermediate appellate court and in an application for permission
to appeal to the state's highest court. <u>O'Sullivan</u>, 526 U.S. at
848.

"The exhaustion requirement is not satisfied unless the
federal claim has been "fairly presented" to the state courts. <u>Daye</u>
<u>v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*),
<u>cert. denied</u>, 464 U.S. 1048 (1984). However, "[f]or exhaustion
purposes, 'a federal habeas court need not require that a federal
claim be presented to a state if it is clear that the state court
would hold the claim procedurally barred.' " <u>Grey v. Hoke</u>, 933 F.2d

117,120 (2d Cir. 1991) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263, n.9 (1989)(other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." <u>Id.</u>

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977); <u>see also</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992).

**B.    Petitioner's Claims for Habeas Relief**

**1.    Ineffective Assistance of Trial Counsel**

The appropriate Constitutional standard for assessing attorney performance is "reasonably effective assistance." <u>Strickland</u>, 466 U.S. at 687. To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient." <u>Id.</u> To determine whether a counsel's conduct is deficient, "[t]he court must ... determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u> at 690. In gauging the deficiency, the court must be "highly deferential," must "consider[ ] all the circumstances," must make "every effort

... to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89. The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors [ ] have ... a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture." Id. at 695-96.

Second, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome ... would have been different[.]" McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome;" Strickland, 466 U.S. at 688, a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." Id. at 693. Thus, even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt.

In his memorandum of law, petitioner avers that trial counsel was ineffective because: 1) counsel called a defense expert that undercut evidence offered in support of petitioner's innocence; and 2) counsel consented to the prosecution's request that the forensic evidence not be disclosed to the jury and agreed to a misleading stipulation that informed the jury that the vaginal swab taken from

the victim did not contain petitioner's DNA. Pet'r Mem. 4-6 (Dkt. #11).

### a. Defense Expert Undermined Petitioner's Defense

At trial, counsel called urologist Dr. John Valvo ("Valvo") to testify for the defense. Throughout the trial, counsel built his defense around the lack of petitioner's DNA on the vaginal swab taken from the victim, thereby discrediting the testimony of the victim that sexual intercourse occurred. However, upon direct examination of Valvo, counsel elicited from him that, consistent with the events recounted by the victim (wherein petitioner ejaculated in her mouth), the doctor would in fact not expect to see sperm on the vaginal swab after a sequence of oral sex, followed by intercourse, followed by oral sex resulting in ejaculation. T. 254-57, 383-85.

On direct appeal, the Appellate Division held that "defense counsel's examination of defendant's expert urologist did not aid and may have harmed the defense. Nevertheless, that single error did not so seriously compromise defendant's right to a fair trial that it qualifies as ineffective representation." Mathis, 8 A.D.3d at 967.

Here, petitioner has failed to show that, as a result of trial counsel's strategy, there is a reasonable probability that the outcome of his trial would have been different. Indeed, Valvo's testimony tended to undermine petitioner's defense because it was

consistent with the sequence of the rape and sodomy as testified to by the victim.[3]  However, in that petitioner openly admitted to having sexual contact with the victim, the fundamental issue at trial was credibility, and the jury chose to believe the victim's version that the encounter was forcible and nonconsensual. Therefore, the Court does not find the doctor's testimony sufficiently prejudicial in light of the evidence of petitioner's guilt.  As a result, the Appellate Division's decision rejecting petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of <u>Strickland</u>, nor was it an unreasonable application of the facts in the light of the evidence presented at trial.

### b.    Failure to Offer Exculpatory Evidence

At trial, petitioner denied raping or sodomizing the victim, but rather maintained that he only had consensual oral sex with her.  T. 406.  He further testified that when he left the victim in the garage, she was not wearing pants.  As he walked away, petitioner saw two men approach the garage.  T. 403-04.

A Monroe County Public Safety Laboratory Report ("Lab Report") dated March 13, 2002 was marked as Defense Exhibit C for identification.  T. 246-47.  <u>See</u> Appellate Br. Attach. 7.  The lab

---

[3] To recapitulate, the victim testified to three consecutive sexual acts: first that the petitioner forcibly sodomized her, followed by forcible sexual intercourse, and ending with forcible (oral) sodomy and ejaculation. Valvo's opinion that sperm would not be present in a vaginal swab after this particular sequence of events was consistent with the prosecution's proof that ejaculation occurred in the victim's mouth, and not her vagina.

report concluded that: (1) that the DNA profile obtained from the sperm samples from the garage and the oral swab matched petitioner; (2) the semen stain from the victim's underpants indicated a mixture of two contributors, excluding the victim and the petitioner; and (3) the vaginal swab indicated a mixture of three contributors, one possibly being the victim but none of them matching the petitioner. The jury was told, by stipulation between the parties, that the DNA profile obtained from the victim's vaginal swab contained no DNA from the petitioner, but was not told about the DNA of two others found in the vaginal swab. Defense counsel did not seek to introduce the lab report into evidence.

A reading of the trial record shows that counsel's approach to stipulate to certain facts was well-within the boundaries of reasonable trial strategy. See U.S. v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) ("As with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics.'") (quoting Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997)). Contrary to petitioner's assertion that trial counsel "agreed to a misleading stipulation," counsel in fact sought to utilize the language contained in the lab report, which specified that the DNA profile obtained from the vaginal swab "excluded" petitioner. T. 241-42. The court, however, instructed the parties to use the phrase, "contained no DNA from defendant" instead, reasoning that

"it's [sic] goes too far using the word 'excludes'". T. 242, 306. The dialogue between the court and defense counsel intimates that use of the word "exclude" could have implicated the Rape Shield Law, codified at C.P.L. § 60.42.[4] T. 242-47.

Petitioner argues that using the language that petitioner's DNA was "absent" from the vaginal swab, "implies, by silence, that no sperm was found on the swab." Pet'r Mem. at 5. This argument, however, is purely speculative; there is nothing in the record demonstrating that the jury was misled by the use of the word "absent" as opposed to "excluded", nor does the presence of two other individual's DNA exculpate petitioner, because the testimony of both the victim and the petitioner confirmed that petitioner ejaculated in the victim's mouth, and not her vagina. As previously stated, petitioner was given the opportunity to provide extensive testimony relating to the events occurring on the night of November 6, 2003. The jury weighed that testimony, along with the other evidence in the record, including the victim's testimony, and was ultimately found guilty of forcible rape and sodomy.

---

[4] New York's Rape Shield Law bars evidence of a complainant's past sexual conduct unless one of five exceptions applies. The first four are narrowly defined exceptions which do not apply to the instant case. The fifth is an "interest of justice" provision which gives the trial court discretion to admit "relevant and admissible" evidence in the interests of justice. The Appellate Division held that the lab report indicating the presence of semen from two men other than petitioner did not fall within the "interests of justice" exception to the Rape Shield Law. Mathis, 8 A.D.3d at 967; see C.P.L. § 60.42(5). It is for this reason defense counsel likely did not seek to move the lab report into evidence; the dialogue between the trial court and defense counsel regarding the stipulation strongly suggests that the court would not have permitted the lab report's submission to the jury in light of the Rape Shield Law. T. 242-47.

Petitioner has not demonstrated that counsel's failure to move the lab report into evidence or stipulating to the facts therein constitutes ineffective assistance. Moreover, by the terms of Strickland, the Court does not find that the omission prejudiced petitioner's defense in light of the evidence against him. Thus, the Appellate Division's application of Strickland was not unreasonable.

## 2. Double Jeopardy

Petitioner, who was charged with two counts of sodomy relating to the same victim, alleges that his Fifth Amendment right against double jeopardy was violated because it is possible that the jury may not have been able to distinguish one sodomy charge from the other. Pet. ¶ 22(B); Appellate Br. 23. This claim has not been properly exhausted because petitioner did not present it to the state's highest court.

Arguments raised in a federal habeas petition may only be considered where the petitioner has first exhausted all state remedies. Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991). State remedies are considered exhausted when a petitioner has presented the Federal Constitutional claim asserted in the petition to the highest state court, and has informed that court of both the legal and factual bases for the federal claim. Picard v. Connor, 404 U.S. 270, 276-77 (2d Cir. 1971); Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982)(*en banc*).  Where a petitioner

raises a single issue in his application for leave to appeal to the New York Court of Appeals, all other issues are not adequately presented and thus barred from federal review. <u>Jordan v. Lefevre</u>, 206 F.3d 196 (2d Cir. 2000); <u>see also</u> <u>Grey</u>, 933 F.2d at 120. Here, as in <u>Jordan v. Lefevre</u>, petitioner raised one primary issue in his leave application to the New York State Court of Appeals, while making a passing reference to the remaining claims in his brief on direct appeal. Because the Second Circuit does not consider these claims to be fairly presented to the state courts, they are technically unexhausted. <u>See generally</u>, <u>Jordan</u>, 206 F.3d 198-99. Petitioner cannot again seek leave to appeal this claim in the Court of Appeals because he has already made one request for leave to appeal to which he is entitled. <u>See</u> <u>Grey</u>, 933 F.2d at 120(citing N.Y. Court Rules § 500.10(a)). Collateral review of this claim is also barred because it was previously raised and determined on the merits on direct appeal. C.P.L. § 440.10(2)(a). The Court finds that petitioner no longer has "remedies available" in the New York State courts under 28 U.S.C. § 2254(b) and his claim is thus deemed exhausted but procedurally defaulted. <u>See</u> <u>Correa v. Duncan</u>, 172 F.Supp.2d 378, 382 (E.D.N.Y. 2001)(petitioner's unexhausted claim was procedurally barred where petitioner was precluded from raising the claim before the state's highest court because he had already made the one request for leave to appeal to which he was entitled, and collateral review would be barred under C.P.L. § 440.10(2)(a)

because issue had previously been addressed on direct appeal); see also Harris v. Artuz, 2000 WL 358377 at *2-3 (S.D.N.Y. Apr. 7, 2000). Absent a showing of cause for the procedural default and prejudice resulting therefrom, the petitioner is barred from litigating the merits of this claim. Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). Petitioner makes no such showing, and this claim is therefore dismissed.

### 3. Material Evidence not Introduced at Trial

Petitioner next alleges that "[t]he prosecution refused to allow in the evidence that the defendant's DNA didn't match the sperm sample taken from this alleged rape victim." Pet. ¶ 22(C). This claim has no factual support in the record because the parties entered into a stipulation that the petitioner's DNA was not found in the sperm samples taken from the victim's vagina and underwear. Thus, the evidence that petitioner argues should have been introduced to the jury was, in fact, submitted as evidence. See T. 306-07; Appellate Br. Attach. 7. Further, the lab report would likely not have been admissible under C.P.L. § 60.42, and, in any event, a state court's erroneous evidentiary rulings generally do not present constitutional issues cognizable on habeas review. See Crane v. Kentucky, 476 U.S. 683, 689 (1986). This claim does not present a basis for habeas relief and is therefore dismissed.

### 4. Repugnant Verdicts

Petitioner alleges here, as he did in his C.P.L. § 440.10 motion, that the verdict is repugnant because he was convicted of one count of sodomy and acquitted of another count of sodomy. See Appx. C at 5, S. 520. Petitioner's claim is not cognizable in this federal habeas proceeding. See Harris v. Rivera, 454 U.S. 339, 344 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside") (citing Dunn v. United States, 284 U.S. 390 (1932)); United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994) ("[I]t has long been established that inconsistency in jury verdicts of guilt on some counts and not guilty on others in not a ground for reversal of the verdicts of guilty."); Bowden v. Keane, 85 F.Supp.2d 246, 251 n.6 (S.D.N.Y. 2000) ("[A] jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts.") (citations omitted).

In any event, petitioner's claim is procedurally barred. The issues in his 440.10 motion were rejected pursuant to C.P.L. § 440.10(2)(b) because his appeal was pending at the time his motion for *vacatur* was reviewed by the state court. Petitioner, however, failed to raise the claim on direct appeal. Consequently, the claim is deemed exhausted but procedurally barred because he could have raised the issue on appeal, but did not. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991); C.P.L. § 440.10(2)(c). Petitioner has failed to establish the requisite cause and

prejudice or a fundamental miscarriage of justice necessary to overcome the procedural bar. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

For these reasons, petitioner's claim is dismissed.

### 5. Harsh and Excessive Sentence

In his final ground for habeas relief, petitioner argues that the sentence imposed on him by the trial court was harsh and excessive. Pet. ¶ 22(D). Petitioner raised the issue on direct appeal and in his § 440.10 motion. In the interest of justice, the Appellate Division modified the sentence of two-25-year prison terms to run concurrently rather than consecutively. Mathis, 8 A.D.3d at 967. Petitioner makes no factual or legal argument in addition to what was previously determined by the Appellate Division.

In any event, a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's

denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Both petitioner's original sentence and his sentence as modified were within the statutory range. See New York Penal Law § 70.06. This claim is therefore dismissed.

## IV.  Conclusion

For the reasons stated above, Keith Mathis's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because the petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     November 12, 2009
           Rochester, New York